RECEIVED
IN LAKE CHARLES, LA
SEP 2 0 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE DIVISION

| | | |
|---|---|---|
| DANIEL D. BROWN, INDIVIDUALLY AND IN HIS CAPACITY AS SELLERS' REPRESENTATIVE FOR: BBRC INVESTMENTS, LLC, SPA2004, LLC, SPO2004, LLC, , ET AL | : | DOCKET NO. 3:10-0122 |
| VS. | : | JUDGE TRIMBLE |
| HARRIS SCHWARTZBERG AND ALBERT SCHWARTZBERG | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a "Revised Motion to Dismiss the "Citiscape" Claims Pursuant to Federal Rules of Civil Procedure 12(b)(6) and to Dismiss the "Citiscape Parties" as Improperly Joined Pursuant to Federal Rules of Civil Procedure 21(A)" (R. #35 and 63).[1]

## FACTUAL STATEMENT

*General allegations*

This suit involves the sale of healthcare business assets and equity interests such as nursing homes and assisted living facilities, and an apartment complex.[2] Plaintiffs in this action sold assets of various healthcare businesses (nursing homes and assisted living facilities) and equity interests in certain ancillary businesses to defendants. Plaintiff, Daniel Brown, as representative of numerous

---

[1] See R. #62 which converted the motion to dismiss to motions for summary judgment because evidence outside the pleadings was submitted in support of the motions.

[2] The assets sold included real estate, operational assets, and leasehold interests as well as the sale of equity interests that plaintiffs held in ancillary businesses.

sellers, has sued defendants, Harris Schwartzberg and Albert Schwartzberg, asserting that they are solidarily liable to plaintiffs for a "Guaranteed Indebtedness" represented by two promissory notes, Notes A and B (collectively referred to as the Notes) in the original principal amount of $6,362,103.00 and $1,467,610.00, respectively. Plaintiffs allege that the Note A and B borrowers failed to make timely payments required under the Notes and thus are in default. They allege that after being given proper notice, defendants have failed to cure the defaults. Plaintiffs, as payees on the notes, have invoked the acceleration clauses and declare that all unpaid principal and accrued interest is immediately due and payable in full.

Plaintiffs allege that both defendants also executed continuing guaranties in favor of plaintiffs which makes defendants absolutely, unconditionally, irrevocably, completely, immediately and solidarily guarantors for the benefit of the plaintiffs, for the prompt payments of both the Note indebtedness and the additional indebtedness. Plaintiffs also seek attorneys fees and costs of this matter.

In response to the complaint, defendants answered and asserted numerous counterclaims many of which are the subject of the instant motions. First, defendants (counterclaim plaintiffs) assert that pursuant to the terms and conditions of the Seller Subordination Agreement executed on March 15, 2006 by the borrowers and the lenders,[3] there are no payments currently due to plaintiffs from the borrowers and no basis for plaintiffs to accelerate any indebtedness.

Counterclaim plaintiffs allege that counterclaim defendants delayed making payments due for rehabilitation services provided by Elite Rehabilitation, LLC, and that counterclaim defendants

---

[3] Merrill Lynch Financial Services, Inc., as administrative agent for the participating lenders.

consented to a delay of all payments to be made on the Notes. Counterclaim plaintiffs also assert claims of fraud against the counterclaim defendants and seek an offset of any recovery by any amount owed by plaintiffs to defendants/counterclaim plaintiffs.

Counterclaim plaintiffs allege the following counterclaims against plaintiffs/counterclaim defendants: fraud, fraudulent inducement, vice of consent, transactions in error, securities fraud under both federal and state law, material misrepresentations, breach of fiduciary duty, misappropriation and conversion of funds, and unjust enrichment.

*The closings*

On October 10, 2005, the First Amended and Restated Asset and Equity Interest Purchase Agreement (the "Healthcare Asset Agreement") was executed by and among substantially all of the plaintiffs (sellers) and OP Owner LLC and RE Owner LLC (buyers). Two separate closings were held which involved certain healthcare facilities and the Citiscape Apartments; one on January 1, 2006 and another on March 1, 2006. The seller was Daniel D. Brown, individually, and as representative of various business entities; the purchasers were defendants, Harris Schwartzberg and Albert Schwartzberg (the "Schwartzberg defendants") and other various business entities.[4]

The Healthcare Asset Agreement related only to the sale of the healthcare-related assets and businesses. Attached as Schedule 1 to the First Amended Asset and Equity Interest Purchase Agreement is a schedule of the healthcare assets and equity interests sold. The "Businesses" section of Schedule 1 lists the operations sold by plaintiffs which defendants suggest are all asset sales. The "Ancillary Businesses" section lists the sale of equity interests held by one or more of the plaintiffs in five businesses. The Schedule further sets forth the allocation of the purchase price for each of

---

[4] Plaintiff disputes that the Schwartzberg defendants are the only purchasers.

3

the assets and for each of the Ancillary Businesses.

The Schwartzberg defendants owned and/or controlled OP Owner LLC and RE Owner LLC; OP Owner LLC's rights under the Healthcare Asset Agreement were assigned to various Schwartzberg-controlled and non-Schwartzberg controlled entities pursuant to a Transfer of Rights Agreement.[5]

Also on October 10, 2005, Essen Park Apartments Limited Partnership and DDB Enterprises, Inc., as sellers, and RE Owner, LLC as buyer, entered into a Purchase Agreement ("Citiscape Purchase Agreement") for the sale of the Citiscape Apartments and a vacant lot, known as the Citiscape Apartments.[6] While RE Owner, LLC appeared as the purchasing party under the Citiscape Purchase Agreement, it designated two non-Schwartzberg controlled entities to become the ultimate purchasers of the assets.

On January 1, 2006, OP Owner LLC, RE Owner LLC, Retirement Center 14686 Tenant LLC, Fountain View 215 Tenant LLC, Jackson Manor 1694 Tenant LLC, Panola 501 Partners LP, Acadian 4005 Tenant LLC, Regency 14333 Tenant LLC, Lakewood Quarters Rehab 8225 Tenant LLC, Elite Rehabilitation AB Owner LLC, National Pharmacy Acquisition AB Owner LLC, Life Source Services AB Owner LLC, Emerald Health Care AB Owner LLC, Pinnacle Home Healthcare AB Owner LLC, Sherwood 2828 Tenant LLC, and Lakewood Quarters Assisted 8585 Tenant LLC ("Note A Borrowers") executed a Negotiable Promissory Note for the principal amount of $6,362,103.00 in favor of Daniel D. Brown, in his capacity as Sellers' Representative under the

---

[5] Plaintiff's Exhibit 3.

[6] The parties dispute whether or not this sale was a separate transaction or part of the same transaction as the Healthcare Asset Agreement.

4

Asset Agreement for BBRC Investments, LLC, SPA2004, LLC, SPO2003, LLC, JMA2004, LLC, JMO2004 LLC, Lakewood Quarters Limited Partnership, RA2002, LLC, PA2002 Partnership, Limited, A Louisiana Limited Partnership, PO2002 Partnership, Limited, A Louisiana Limited Partnership, RO2002, LLC, R.C. Acquisition, Limited Liability Company, Old Hammond Retirement Center Limited Partnership, H.S. Acquisition, Limited Liability Company, Sherwood Manor Rehabilitation and Nursing Home Limited Partnership, Daniel D. Brown and HPO2002, LLC ("Note A Lenders").[7]

On March 1, 2006, OP Owner LLC, RE Owner, LLC, Retirement Center 14686 Tenant LLC, Fountain view 215 Tenant LLC, Jackson Manor 1691 Tenant LLC, Panola 501 Partners LP, Acadian 4005 Tenant LLC, Regency 14333 Tenant LLC, Lakewood Quarters Rehab 8225 Tenant LLC, Elite Rehabilitation AB Owner LLC, National Pharmacy Acquisition AB Owner LLC, Life Source Services AB Owner LLC, Emerald Health Care AB Owner LLC, Pinnacle Home Healthcare AB Owner LLC, Sherwood 2828 Tenant LLC, Lakewood Quarters Assisted 8585 Tenant LLC, Atrium 6555 Tenant LLC, St. Charles 1539 Tenant LLC, and Woodland Village 5301 Tenant LLC (Note B Borrowers) executed a Negotiable Promissory Note in the principal amount of $1,467,610.00 in favor of Daniel D. Brown, in his capacity as Sellers' Representative under the Asset Agreement for AA2003, LLC, B R H, Inc., DDB Enterprises, Inc. and Woodland Village, LLC (Note B Lenders).[8]

Both Notes A and B are secured by defendants, Harris Schwartzberg and Albert Schwartzberg, pursuant to two separate Amended and Restated Continuing Guarantees dated March

---

[7] Plaintiffs' exhibit 4, R. #68-4.

[8] Plaintiffs' exhibit 5, R. #68-5.

1, 2006.[9] Plaintiffs (counterclaim defendants) assert that the Citiscape Parties are not borrowers under the notes and that the Continuing Guaranties of the Schwartzberg defendants are completely separate and apart from the Citiscape transaction. Moreover, the Continuing guarantees do not guaranty any indebtedness with respect to the Citiscape transaction. Defendants (counterclaim plaintiffs) assert that the claims of the Citiscape Parties and other defendants are premised on the same transactions, or series of transactions inasmuch as the Citiscape properties occurred concurrently with the other properties and all defendants relied upon representations by Brown in connection therewith.

Plaintiffs assert that defendants (Note A Borrowers and Note B Borrowers) are in default. As of December 31, 2009, the total amount due and unpaid on Note A is $5,902,658.33 in principal and interest, and on Note B, is $1,361,625.30 in principal and interest, with interest continuing to accrue at the default rate, plus reasonable costs and expenses including attorneys' fees and expenses. Defendants deny any liability under the Notes and further assert that pursuant to the terms and conditions of the Seller Subordination Agreements, there are no payments currently due to plaintiffs from the Note A Borrowers or the Note B Borrowers.

Counterclaim defendants assert that the Citiscape Purchase Agreement was not related to any healthcare assets, was not contingent upon the closing of the Healthcare Asset Agreement, and was an entirely separate transaction. Counterclaim defendants maintain that the Citiscape claims must be dismissed because the Citiscape transaction does not relate to the two promissory notes and guarantees that underlie the Amended Purchase Agreement (of the healthcare facilities).

---

[9] Plaintiffs' exhibits 6 and 7. R. #68-6-7.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[11] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[12] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[13] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[14] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[15] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[16]

---

[10] Fed. R.Civ. P. 56(c).

[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[12] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[13] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[14] Anderson, 477 U.S. at 249.

[15] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[16] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[17]

## LAW AND ANALYSIS

*Motion to dismiss Citiscape claims and Citiscape parties*[18]

Plaintiffs seek to dismiss the claims asserted in paragraphs 11, 38 and 39 of the Schwartzberg Defendants' First Amended Answer and Counterclaim ("Counterclaim") and also allegedly improperly joined Counterclaim plaintiffs, Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC ("Citiscape Parties"). Plaintiffs contend that although the counterclaim alleges that the Citiscape Parties have rights and claims against one or more of the plaintiffs, it does not allege that these entities either purchased or owned the Citiscape properties. The actual purchasers are Citiscape 5010 LLC and Citiscape Out Parcel LLC.

Plaintiffs argue that the claims made by the Citiscape Parties do not arise out of the same transaction or occurrence of the promissory notes at issue in this litigation, and that the plaintiffs are not owed any money by the Citiscape Parties under the promissory notes, thus the continuing guaranties of the Schwartzberg Defendants have nothing to do with the transactions involving the sale of the Citiscape properties referred to in paragraphs 11, 38 and 19 of the counter-complaint. Plaintiffs further assert that Essen Park Apartments Limited Partnership (the seller of the Citiscape Apartments) is not a plaintiff in this suit, nor a lender under the promissory notes at issue, and the Citiscape Parties are not the owners of the real estate involving these two assets. Rather, the real estate was purchased by and is owned by entities not affiliated with the Schwartzberg Defendants.

---

[17] Anderson, 477 U.S. at 249-50.

[18] Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant, LLC.

8

*Citiscape transaction*

On October 10, 2005, Essen Park Apartments Limited Partnership and DDB Enterprises, Inc., (sellers) and RE Owner LLC (buyer) executed a Purchase Agreement ("Citiscape Purchase Agreement") for the sale of the apartment complex known as Citiscape Apartments, and a vacant lot. Plaintiffs argue that the Citiscape Purchase Agreement[19] was not related to the healthcare assets and not contingent upon the closing of the Healthcare Asset Agreement. In other words, it was an entirely separate transaction and no seller financing was involved under the Citiscape Purchase Agreement.

Plaintiffs remark that in order to take advantage of the IRS Code's tax deferral provisions, via a 1031 exchange, RE Owner LLC elected to have the Citiscape assets purchased by 1031 purchasers (Citiscape 5010 LLC and Citiscape Out Parcel LLC) controlled by Westside Houses, Inc. ("Westside"). Westside is a third party in which the Schwartzberg defendants own no interest, and the 1031 purchasers are not parties to this litigation.

The parties to the Citiscape transaction are as follows:

Citiscape Apartments

    Seller:     Essen Park LP (counterclaim defendant)
    Purchaser:     Citiscape 5010 LLC (This entity is a § 1031 exchange purchaser, the manager of which is Westside Houses, Inc. It is not a Schwartzberg entity, and is not a counterclaim plaintiff or a party to this litigation.

Citiscape Out Parcel

    Seller:     DDB Enterprises, Inc.(one of the plaintiffs)
    Purchaser:     Citiscape Out Parcel LLC (This entity is a § 1031 exchange purchaser, the manager of which is a Westside Houses, Inc. It is not a Schwartzberg entity, and is not a counterclaim plaintiff or a party to

---

[19] Plaintiffs' exhibit 3.

this litigation.)

*The claims*

Plaintiffs seek to have all claims pertaining to the Citiscape transaction dismissed. Plaintiffs argue that the claims made by the Citiscape Parties do not arise out of the same transaction or occurrence as the two promissory notes at issue in this litigation. Furthermore, because the Citiscape Parties are not borrowers under the Notes, the Continuing Guaranties executed by the Schwartzberg defendants have nothing to do with the Citiscape transaction or the Citiscape Parties.

The allegations of paragraphs 11, 38 and 39 of the Counterclaim are as follows:

> 11. A second Purchase Agreement was simultaneously entered providing for the purchase of an apartment building and adjacent lot, for an additional purchase price of $24,233,500.00.
>
> 38. As another example, the Sellers had knowledge of faulty construction at Citiscape at Essen Apartments, creating a substantial mold problem. The Sellers performed cosmetic repairs to the mold-affected areas so that such areas would not be discovered by Purchasers.
>
> 39. Similarly, Sellers sold Purchasers a vacant lot adjacent to Citiscape providing Purchasers with a "pro forma" expansion plan for Citiscape. After the closing, it was discovered by Purchasers that the pro forma expansion plan was improper and could never be achieved because of building restrictions and zoning restrictions and that the pro forma was essentially fictitious from a sales and marketing perspective.

Counterclaim plaintiffs maintain that because the Citiscape transaction arose out of the same transaction and/or occurrence, the counterclaims are compulsory pursuant to Rule 13 of the Federal Rules of Civil Procedure. Counterclaim plaintiffs argue that the claims comprise the same transaction because the real estate transactions involved a series of representations by Daniel D. Brown, the sellers' exclusive spokesman, with regard to the condition and financial viability of the

10

properties and the transfer of interests in the properties. Further, the purchase agreements for all of the properties and ancillary businesses were executed on the same day, October 10, 2005. Nine of the healthcare properties and the Citiscape properties closed simultaneously, effective January 1, 2006, and the transactions were negotiated simultaneously among some of the same representatives of the parties and were reflected in purchase agreements executed and closed simultaneously.

A claim is compulsory when at least one of four inquiries is met: (1) the issues of fact and law raised by the claim and counterclaim are the same; or (2) res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; or (3) substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; or (4) there is any logical relationship between the claim and counterclaim.[20] Counterclaim plaintiffs argue that the Citiscape claims meet tests one, three, and four.

As to the logical relationship test, counterclaim plaintiffs maintain that there is a logical relationship between the Citiscape claims and plaintiffs' claims on the main demand. All involved a common series of representations by Brown with regard to the condition and financial viability of the properties, and transfers of interests in the properties to the defendants, including the Citiscape Parties. The purchase agreements for all of the properties and ancillary business were executed on the same day with nine of the closings of the properties and Citiscape taking place on the same day. The transactions were negotiated simultaneously among representatives of the same parties as reflected in the purchase agreements that were executed and closed simultaneously.

---

[20] Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053, 1058 (5th Cir. 1992); citing Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357, 1360 (5th Cir. 1979); see also Underwriters at Interest on Cover Note JHB92m10582079 v. Nautronix, Ltd, et al 79 F.3d 480, 483 n. 2 (5th Cir. 1996).

Counterclaim plaintiffs further argue that for the same reasons, the first and third tests are also met as the same evidence and issues of fact and law will be involved. Finally, counterclaim plaintiffs argue that the joinder of the Citiscape Parties does not defeat diversity in this case; hence, it does not run afoul of Rule 13's proscription that a party cannot assert a compulsory counterclaim if it requires joinder of a party over whom the court cannot acquire jurisdiction.

In the alternative, counterclaim plaintiffs maintain that the Citiscape claims are properly raised as a permissive counterclaim citing United Mine Workers of America v. Gibbs,[21]. A permissive counterclaim is any counterclaim that is not otherwise compulsory. In United Mine Workers, the court noted that courts should entertain the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies are strongly encouraged. Also see Rule 18 wherein "[a] party asserting a ... counterclaim... may join, as independent or alternative claims, as many claims as it has against an opposing party."

The court finds that the claims made by counterclaim plaintiffs are not compulsory claims because they do not arise out of the same transactions or occurrences with respect to the sale of the healthcare transactions even though the negotiations and transactions involved a series of execution of documents wherein Daniel D. Brown appeared on the documents as the representative of the sellers. The court further finds that the counterclaims are an entirely separate transaction; the issues of fact and law are entirely different. The transactional documents are entirely separate and different. The claims of fraud and defects are not the same as the alleged defaults or the validity of the Notes and guarantees in the original claim filed by plaintiffs. Nothing in the documents executed express that one sale is dependent upon the sale of the other property. Thus, we conclude that the

---

[21] 86 S.Ct. 1130, 1138 (1966).

counterclaims fail the logical relationship test and further find no basis to conclude that the evidence will be the same.

We further find that the representations of the seller (Brown), and the signing of the sale instruments on the same date is not enough to conclude that the healthcare transactions and the Citiscape transaction arose out of the same transaction or occurrence. Accordingly, because none of the tests are met, the counterclaims are not compulsory and must be dismissed. Furthermore, the court finds that the claims are not permissive because the Citiscape transactions, even though executed on the same day, are entirely separate and not related to the healthcare transactions.

*The parties*

Plaintiffs assert that the counterclaim plaintiffs are Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC, who are not the purchasers, nor the owners of either the Citiscape Apartments or the Citiscape Out Parcel (vacant lot) which forms the basis for the allegations in paragraphs 11, 38 and 39.

As to these Citiscape Parties not being owners, and allegedly improperly joined, counterclaim plaintiffs maintain that they can be properly joined under Rule 20(a). Under Rule 20(a), persons may join in an action as plaintiff if: (a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (b) the actions will address any question of law or fact common to all plaintiffs.

Counterclaim plaintiffs allege that plaintiffs committed (1) fraud/fraudulent inducement and/or securities, (2) caused defendants' contractual consent to be vitiated, (3) breached their fiduciary duties, (4) caused defendants to rely to their detriment, and/or (5) have been unjustly enriched at defendants' expense. Thus, counterclaim plaintiffs maintain that plaintiffs' liability in

13

connection with the aforementioned acts are questions of law common to all defendants. Counterclaim plaintiffs rely on the following facts:

(1) They entered into a purchase agreement with Brown, on behalf of plaintiffs, on October 10, 2005.[22]

(2) The acquisition of nine of the facilities and Citiscape were closed simultaneously, with Brown on behalf of the plaintiffs, effective January 1, 2006.[23]

(3) They relied upon a series of false statements by Brown, on behalf of plaintiffs, including obtaining financial data from Brown.[24]

(4) Brown, on behalf of plaintiffs, hid critical information from them and misled them with regard to the physical condition of the premises in question.[25]

(5) As a result of their reliance upon Brown's representations, they have incurred additional expenses and fees, and committed themselves to obligations that they would not have agreed to, had they not been misled by Brown.[26]

Counterclaim plaintiffs argue that they and other defendants will rely on much of the same evidence to establish their claims and their rights to relief, inasmuch as all defendants will offer evidence of Brown's misrepresentations during the course of the simultaneous negotiations and will call many of the same witnesses and rely upon many of the same exhibits.

Plaintiffs assert that the Citiscape transaction was a wholly separate transaction from the transaction involving Note A and B Borrowers, and the Notes have nothing to do with the Citiscape Parties because the Citiscape transaction involved a separate purchase agreement, separate closing

---

[22] Defendants' exhibit A, Stolzberg affidavit, ¶¶ 3-4.

[23] Defendants' exhibit B, Stolzberg affidavit, ¶¶ 12-13.

[24] Defendants' exhibit B, Stolzberg affidavit, ¶ 9.

[25] Id.

[26] Id.

14

documents, and financial arrangements separate and apart from the Notes. Furthermore, the Citiscape Parties are not borrowers or makers of the Notes, and the Continuing Guaranties do not guaranty any indebtedness with respect to the Citiscape transaction. Plaintiffs remark that the seller of the Citiscape Apartments was Essen Park Apartments Limited Partnership and the Seller of the Citiscape Out Parcel (vacant lot) was DDB Enterprises, Inc. ("DDB").[27] Yet, the Notes and Guaranties at issue have nothing to do with the Citiscape transaction.

To support their position, plaintiffs submit the documents involved in the Citiscape transaction which include a Sale [for the Citiscape Apartments] with Assumption of Mortgage and Other Security Devices between Essen Park LP, as Seller, and Citiscape 5010 LLC, as Purchaser,[28] Bill of Sale by Essen Park LP, as Seller, and Citiscape 5010 LLC, as buyer,[29] and Cash Sale [for the vacant lot] between DDB, as Seller and Citiscape Out Parcel LLC, as Purchaser.[30]

Plaintiffs also note that RE Owner, LLC elected to have the Citiscape assets controlled by a 1031 exchange purchaser, Westside Houses, Inc. (Westside") in order to take advantage of Internal Revenue Code § 1031 and the tax deferral benefits it provides. Westside is a third party in which the Schwartzberg defendants own no interest, and the 1031 purchasers controlled by Westside are not parties to this litigation. Hence, plaintiffs maintain that Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC which are Schwartzberg-controlled entities are not the purchasers

---

[27] DDB is a plaintiff in this suit, but only in connection with its sale of assets of Woodland Village, one of the healthcare businesses.

[28] Plaintiffs' exhibit 9.

[29] Plaintiffs' exhibit 10.

[30] Plaintiffs' exhibit 11.

or owners of either the Citiscape Apartments or the Citiscape Out Parcel which forms the bases of the allegations in paragraphs 11, 38, and 39 of the Counterclaim.

The court finds, for the reasons set forth above, that the Citiscape transaction was not within the same series of transactions as the other properties involving the healthcare facilities. The court has determined that the issues of fact and law with respect to the healthcare facilities and the Citiscape transaction are not common to all defendants, despite the allegation that Brown was involved in the alleged misrepresentations or series of alleged false statements as to the condition and financial viability of the properties that occurred in a series of transactions. Thus, we conclude that Citiscape Parties, Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC, are improperly joined and as such shall be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment to dismiss the Citiscape Parties and/or their claims will be granted, dismissing with prejudice the Citiscape Parties, Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC, and the claims of the Citiscape Parties alleged in paragraphs 11, 38 and 39.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of September, 2011.

*James Trimble*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

16