UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL D. BROWN, INDIVIDUALLY AND IN HIS CAPACITY AS SELLERS' REPRESENTATIVE FOR: BBRC INVESTMENTS, LLC, SPA2004, LLC, SPO2004, LLC, , ET AL | : | DOCKET NO. 3:10-0122 |
| VS. | : | JUDGE TRIMBLE |
| HARRIS SCHWARTZBERG AND ALBERT SCHWARTZBERG | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a "Revised Motion to Dismiss Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Alternatively Motion for a More Definitive Statement" (R. #36 and 68) which has been converted to a motion for summary judgment wherein plaintiffs, Daniel Brown, et al, seek the following relief:

(1) an order dismissing allegations of the First Amended Answer and Counterclaim ("Counterclaim") which relate to asset sales brought pursuant to the Federal Securities Exchange Act;
(2) an order dismissing those claims which do not comply with the necessary pleading requirements of the Federal Securities Exchange Act of 1934 (the "Act");
(3) an order dismissing claims of defects;
(4) alternatively, an order directing counterclaim plaintiffs to file a more definite statement.

In considering the instant motion, the court observed that there are 32 counter-claimants that were added to this lawsuit without leave of court to do so. We dismissed with prejudice two of those parties, Citiscape 5010 Tenant LLC and Citiscape Out Parcel Tenant LLC on September 20, 2011 in a Memorandum Ruling and Judgment.[1] Thus, there are 30 remaining counter-claimants. On

---

[1] R. #92 and 93.

September 20, 2011, the undersigned ordered the parties to brief the issue of the procedural capacity of these counter-claimants and the legal bases for which they have interjected themselves into this law suit. The parties have filed their respective memoranda and the instant motion is ready for decision.

## FACTUAL STATEMENT

This suit involves the sale of healthcare business assets and equity interests such as nursing homes and assisted living facilities.[2] Plaintiffs in this action sold assets of various healthcare businesses (nursing homes and assisted living facilities) and equity interests in certain ancillary businesses to defendants. Plaintiff, Daniel Brown, as representative of numerous sellers, has sued defendants, Harris Schwartzberg and Albert Schwartzberg, asserting that they are solidarily liable to plaintiffs for a "Guaranteed Indebtedness" represented by two promissory notes, Notes A and B (collectively referred to as the Notes) in the original principal amount of $6,362,103.00 and $1,467,610.00, respectively. Plaintiffs allege that the Note A and B borrowers failed to make timely payments required under the Notes and thus are in default. They allege that after being given proper notice, defendants have failed to cure the defaults. Plaintiffs, as payees on the notes, have invoked the acceleration clause and declare that all unpaid principal and accrued interest is immediately due and payable in full.

Plaintiffs allege that both defendants also executed continuing guaranties in favor of plaintiffs which makes defendants absolutely, unconditionally, irrevocably, completely, immediately and solidarily guarantors for the benefit of the plaintiffs, for the prompt payments of both the Note

---

[2] The assets sold included real estate, operational assets, and leasehold interests as well as the sale of equity interests that plaintiffs held in ancillary businesses.

indebtedness and the additional indebtedness. Plaintiffs also seek attorneys fees and costs of this matter.

In response to the complaint, defendants answered and asserted numerous counterclaims many of which are the subject of the instant motions. First, defendants and newly added counterclaim plaintiffs assert that pursuant to the terms and conditions of the Seller Subordination Agreement executed on March 15, 2006 by the borrowers and the lenders,[3] there are no payments currently due to plaintiffs from the borrowers and no basis for plaintiffs to accelerate any indebtedness.

Counterclaim plaintiffs allege that counterclaim defendants delayed making payments due for rehabilitation services provided by Elite Rehabilitation, LLC, and that counterclaim defendants consented to a delay of all payments to be made on the Notes. Counterclaim plaintiffs also assert claims of fraud against the counterclaim defendants and seek an offset of any recovery by any amount owed by plaintiffs to defendants/counterclaim plaintiffs.

Counterclaim plaintiffs allege the following counterclaims against plaintiffs/counterclaim defendants: fraud, fraudulent inducement, vice of consent, transactions in error, securities fraud under both federal and state law, material misrepresentations, breach of fiduciary duty, misappropriation and conversion of funds, and unjust enrichment.

*The closings*

On October 10, 2005, the First Amended and Restated Asset and Equity Interest Purchase Agreement (the "Healthcare Asset Agreement") was executed by and among substantially all of the

---

[3] Merrill Lynch Financial Services, Inc., as administrative agent for the participating lenders.

plaintiffs (sellers) and OP Owner LLC and RE Owner LLC (buyers). Two separate closings were held which involved certain healthcare facilities and the Citiscape Apartments; one on January 1, 2006 and another on March 1, 2006. The seller was Daniel D. Brown, individually, and as representative of various business entities; the purchasers were defendants, Harris Schwartzberg and Albert Schwartzberg (the "Schwartzberg defendants") and other various business entities.[4]

The Healthcare Asset Agreement related only to the sale of the healthcare-related assets and businesses. Attached as Schedule 1 to the First Amended Asset and Equity Interest Purchase Agreement is a schedule of the healthcare assets and equity interests sold. The "Businesses" section of Schedule 1 lists the operations sold by plaintiffs which defendants suggest are all asset sales. The "Ancillary Businesses" section lists the sale of equity interests held by one or more of the plaintiffs in five businesses. The Schedule further sets forth the allocation of the purchase price for each of the assets and for each of the Ancillary Businesses.

The Schwartzberg defendants owned and/or controlled OP Owner LLC and RE Owner LLC; OP Owner LLC's rights under the Healthcare Asset Agreement were assigned to various Schwartzberg-controlled and non-Schwartzberg controlled entities pursuant to a Transfer of Rights Agreement.[5]

On January 1, 2006, OP Owner LLC, RE Owner LLC, Retirement Center 14686 Tenant LLC, Fountain View 215 Tenant LLC, Jackson Manor 1694 Tenant LLC, Panola 501 Partners LP, Acadian 4005 Tenant LLC, Regency 14333 Tenant LLC, Lakewood Quarters Rehab 8225 Tenant LLC, Elite Rehabilitation AB Owner LLC, National Pharmacy Acquisition AB Owner LLC, Life

---

[4] Plaintiff disputes that the Schwartzberg defendants are the only purchasers.

[5] Plaintiffs' Exhibit 3.

Source Services AB Owner LLC, Emerald Health Care AB Owner LLC, Pinnacle Home Healthcare AB Owner LLC, Sherwood 2828 Tenant LLC, and Lakewood Quarters Assisted 8585 Tenant LLC ("Note A Borrowers") executed a Negotiable Promissory Note for the principal amount of $6,362,103.00 in favor of Daniel D. Brown, in his capacity as Sellers' Representative under the Asset Agreement for BBRC Investments, LLC, SPA2004, LLC, SPO2003, LLC, JMA2004, LLC, JMO2004 LLC, Lakewood Quarters Limited Partnership, RA2002, LLC, PA2002 Partnership, Limited, A Louisiana Limited Partnership, PO2002 Partnership, Limited, A Louisiana Limited Partnership, RO2002, LLC, R.C. Acquisition, Limited Liability Company, Old Hammond Retirement Center Limited Partnership, H.S. Acquisition, Limited Liability Company, Sherwood Manor Rehabilitation and Nursing Home Limited Partnership, Daniel D. Brown and HPO2002, LLC ("Note A Lenders").[6]

On March 1, 2006, OP Owner LLC, RE Owner, LLC, Retirement Center 14686 Tenant LLC, Fountain view 215 Tenant LLC, Jackson Manor 1691 Tenant LLC, Panola 501 Partners LP, Acadian 4005 Tenant LLC, Regency 14333 Tenant LLC, Lakewood Quarters Rehab 8225 Tenant LLC, Elite Rehabilitation AB Owner LLC, National Pharmacy Acquisition AB Owner LLC, Life Source Services AB Owner LLC, Emerald Health Care AB Owner LLC, Pinnacle Home Healthcare AB Owner LLC, Sherwood 2828 Tenant LLC, Lakewood Quarters Assisted 8585 Tenant LLC, Atrium 6555 Tenant LLC, St. Charles 1539 Tenant LLC, and Woodland Village 5301 Tenant LLC (Note B Borrowers) executed a Negotiable Promissory Note in the principal amount of $1,467,610.00 in favor of Daniel D. Brown, in his capacity as Sellers' Representative under the Asset Agreement for

---

[6] Plaintiffs' exhibit 4, R. #68-4.

AA2003, LLC, B R H, Inc., DDB Enterprises, Inc. and Woodland Village, LLC (Note B Lenders).[7]

Both Notes A and B are secured by defendants, Harris Schwartzberg and Albert Schwartzberg, pursuant to two separate Amended and Restated Continuing Guarantees dated March 1, 2006.[8] Plaintiffs assert that defendants (Note A Borrowers and Note B Borrowers) are in default. As of December 31, 2009, the total amount due and unpaid on Note A is $5,902,658.33 in principal and interest, and on Note B, is $1,361,625.30 in principal and interest, with interest continuing to accrue at the default rate, plus reasonable costs and expenses including attorneys' fees and expenses. Defendants deny any liability under the Notes and further assert that pursuant to the terms and conditions of the Seller Subordination Agreement, there are no payments currently due to plaintiffs from the Note A Borrowers or the Note B Borrowers.

## PROCEDURAL CAPACITY OF COUNTER-CLAIMANTS

In their memoranda, the counter-claimants concede that two of the parties/plaintiffs-in-counterclaim, AS Master, LLC and Schwartzberg Associates, LLC should be dismissed. Accordingly, we will dismiss these two parties from this lawsuit. Of the thirty-two plaintiffs-in-counterclaim (counter-claimants), twenty-eight remain in the lawsuit.

Counter-claimants maintain that the counterclaim ensures judicial efficiency and provides the parties complete and effective relief in a single action, and avoids multiple, inconsistent verdicts. As noted by the counter-claimants, the two guarantors, the Schwartzberg defendants will succeed to all defenses on the underlying obligations pursuant to Notes A and B. Counter-claimants further note

---

[7] Plaintiffs' exhibit 5, R. #68-5.

[8] Plaintiffs' exhibits 6 and 7. R. #68-6-7.

that the plaintiffs have the right to sue the makers/borrowers of the Notes.[9] The counter-claimants assert that the defenses made by them would be the same defenses that the guarantors would assert. Thus, if the plaintiffs lost their case, they could then file another suit against the counter-claimants on the same indebtedness; during the second suit the court would consider the same evidence and testimony presented in the first trial.

Plaintiffs remark that the federal courts have not given a definitive answer regarding whether Federal Rule of Civil Procedure 13(h) requires leave of court to add parties to a counterclaim and further remark that in the 1966 amendment to Rule 13(h), the requirement that a court order be obtained to join additional parties was dropped without comment in the Advisory Committee Notes.[10]

We must also decide if joinder of these parties is proper under Federal Rules of Civil Procedure 19 or 20. Pursuant to Rule 19, a necessary party is one in whose absence "complete relief cannot be accorded among those already parties," or those parties who "claim an interest relating to the subject of the action and [who are] so situated that the disposition of the action may (i) as a practical matter impair or impede [their] ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."[11]

Under Rule 20(a), persons may join in an action as plaintiffs if: (a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (b) the actions will address any question of

---

[9] It is asserted that a Seller Subordination Agreement prohibited plaintiffs from suing the makers of the notes, but that such prohibition was limited in time.

[10] See Mountain States Sports, Inc. v. Sharman, 353 F.Supp. 613 (D.Utah 1972).

[11] Id.

law or fact common to all plaintiffs.

As noted by the counter-claimants, plaintiffs' suit against the guarantors is entirely derivative of the underlying obligations on the Notes. If the counter-claimants owe the amounts due on the Notes, then the guarantors have potential liability under the guaranties. Conversely, if the counter-claimants do not owe the amounts due on the Notes, the guarantors cannot be liable on the guaranties. As argued by the counter-claimants, once the time period under the Seller's Subordination Agreement has lapsed, the claims brought against the Swartzberg defendants (guarantors), can also be asserted against the borrowers/counter-claimants. There is no doubt that the action(s) will address questions of law or fact that are common to the parties. Furthermore, the Schwartzberg guarantors succeed to the defenses of the makers of the Notes on the underlying obligations.[12] Thus, we find that the counter-claimants are properly joined under Rule 20.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] A fact is "material" if its existence or

---

[12] **L.R.S. 10:3-305. Defenses and claims in recoupment**

(a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following: . . .
(2) . . . a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract.

[13] Fed. R.Civ. P. 56(c).

nonexistence "might affect the outcome of the suit under governing law."[14] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[15] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[16] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[17] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[18] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[19] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20]

## LAW AND ANALYSIS

In this motion, plaintiffs seek to dismiss (1) any Securities Exchange Act of 1934 (the "Act") violations with respect to asset sales because they are not subject to the Act, (2) fraud allegations

---

[14] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[15] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[16] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[17] Anderson, 477 U.S. at 249.

[18] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[19] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[20] Anderson, 477 U.S. at 249-50.

because they are not alleged with the required specificity under Rule 9(b) of the Federal Rules of Civil Procedure, (3) any allegations under the Act that do not comply with Rule 9(b) and the additional heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),[21] (4) any real estate claims made by parties who are not the real estate owners, or alternatively, plaintiffs seek a more definitive statement, (5) the counterclaims, inasmuch as the exclusive remedy of the purchasers is provided under the Asset Agreement, and/or plaintiffs seek to have counter-claimants file a more definitive statement.

*Asset sales and violations of the Act*

The instant lawsuit involves a series of transactions that include the sale of assets and equity interests. Plaintiffs seek to dismiss the claims of the Act's securities' violations with respect to asset sales.[22]

Plaintiffs argue that the sale of the assets of the nursing homes and assisted living facilities

---

[21] Section 21D of the Securities Exchange Act of 1934 at 15 U.S.C. § 78u-4(b).

[22] Section 10(b) of the Act and Rule 10b-5 impose potential liability on persons for making any materially false or misleading statements, or for omitting material facts in connection with the purchase or sale of a security. Section 10 of the SEC 34 Act declares, inter alia, that "it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
Rule 10b-5, promulgated pursuant to Section 10(b), declares it illegal "for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any Act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.   17 C.F.R. 240.10b-5.

purchased by the counter-claimants are not securities, and thus, their claims with respect to the asset purchases do not fall within the purview of either federal or state securities laws. Counter-claimants submit that the "single transaction in question involved the sale of both securities and non-securities, and the counterclaim alleges violations of federal securities laws and numerous other causes of Action."[23] Thus, counter-claimants argue that there is no basis for parsing out allegations that relate to non-securities.

"Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called."[24] Neither party has provided this court with legal authority as to the definition of the sale of a security pursuant to the Securities Exchange Act of 1934, nor have they presented arguments as to how the instant real estate transactions may or may not be included within the scope of the SEC's broad definition of the sale of a security. Accordingly, the court finds that there are issues of fact and law as to whether or not the series of transactions regarding the asset and equity interests fall within the purview of the SEC. To that extent the motion for summary judgment will be denied.

*Fraud allegations and pleading requirements*

Plaintiffs complain that the complaint fails to plead fraud with the required specificity under Rule 9(b), and the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").[25] Thus, plaintiffs seek to dismiss these allegations or alternatively, plaintiffs request that counter-claimants file a more definitive statement to properly allege fraud.

---

[23] Counterclaim Defendants' opposition. R. #38, p. 5.

[24] Reeves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945 (U.S. Ark. 1990).

[25] Section 21D of the Securities Exchange Act of 1934 Act at 15 U.S.C. § 78u-4(b).

A complaint alleging fraud "must state with particularity the circumstances constituting fraud or mistake."[26] Federal Rule of Civil Procedure 9(b) states; "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of the mind of a person may be averred generally."[27] Rule 9(b) requires the who, what, when, where and how to be laid out.[28] Rule 9(b) further requires "allegations of the particulars of time, place and contents of the false representations as well as the identity of the person making the representations and what he obtained thereby."[29] The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[30]

With respect to any allegations of the counterclaims asserted under the Act, the counterclaim must comply with additional heightened pleading requirements. In addition to meeting the requirements of Federal Rule of Civil Procedure 9(b), the PSLRA requires securities fraud plaintiffs to meet three particular requirements referred to as the particularity requirement, the basis requirement and the strong inference requirement. Thus, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which plaintiffs relied; and (5) that

---

[26] Fed.R.Civ.P. 9(b); Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir.2008).

[27] Fed. R.Civ. P. 9(b).

[28] Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003), modified in part on other grounds, on reh'g, and reh'g en banc denied, 355 F.3d 356 (5th Cir. 2003).

[29] Id. (internal quotation marks omitted).

[30] Dorsey, 540 F.3d at 339 (citations omitted).

12

proximately caused the claimant's injuries.[31]

The PSLRA requires a pleading alleging reliance on false or misleading statements or omission as a basis for a § 10(b) and Rule 10b-5 securities fraud claim to (1) specify each statement alleged to have been misleading; (2) identify the speaker; (3) state when and where the statement was made;[32] (4) plead with particularity contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading.[33]

Plaintiffs maintain that the counter-complaint fails to provide sufficient information to put them on notice of the claims alleged and that it fails to allege with specificity the allegations of fraud under either the Act or Rule 9(b). The court agrees. After having read the counter-complaint, the court concludes that the allegations are vague and lack factual specificity as to particular misleading statements, information, or misrepresentations and the source of said statements, information or misrepresentations. Furthermore, the counter-complaint fails to allege when and by whom these statements, information, or misrepresentations were made and/or why said statements, information and misrepresentations were made. Finally, the counter-complaint fails to connect the allegations of fraud, generally and/or under the PSLRA, to any specific statement, document or alleged fact. Accordingly, the court will require counter-claimants to amend their counter-complaint to allege with

---

[31] Southland Securities Corp. v. Inspire Ins. Solutions, 365 F.3d 353, 362 (5th Cir. 2004); Lovelace v. Software Spectrum Inc., 78 F.3d 1015 (5th Cir. 1996); ABC Arbitrage Plaintiffs Group v. Tchuruk, 291 F.3d 336, 348 (5th Cir. 2002); Central Laborers' Pension Fund v. Integrated Electrical Svcs. Inc., 497 F.3d 546 (5th Cir. 2007); Goldstein v. MCI Worldcom, 340 F.3d 238 (5th Cir. 2003).

[32] The "when" requirement is important to determine if claims are time-barred.

[33] Goldstein, 340 F.3d at 245; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

13

specificity as required by Rule 9(b) and the PSLRA any allegations of fraud, either generally or pursuant to the Act.

*Dismissal of non-owners of real estate and defects*

Plaintiffs seek to dismiss claims of defects asserted with respect to the real estate by the counter-claimants who are operators or lessees of the properties[34] because they are not the owners of the real estate. RE Owner LLC (a Schwartzberg entity) elected to permit certain unrelated 1031 purchasers controlled by Westside Houses, Inc. to use these transactions in order to defer capital gains pursuant to Internal Revenue Code § 1031. The allegations relate to defects in the real estate properties. Thus, plaintiffs maintain that the counter-complaint fails to state a claim on which relief can be granted.

Plaintiffs also complain that the allegations only set forth examples of the alleged fraud and further fails to show specifically what plaintiffs did or said that caused counter-claimants to be misled as to the physical condition of the properties.

Counter-claimants argue that the allegations fail to address their contentions concerning plaintiffs' representations about the condition of the properties and how these alleged representations induced the operator/lessees to enter into leases of the properties and to purchase operations of the facilities. Furthermore, the plaintiffs failed to address counter-claimants' reliance on those representations, or the truth or falsity of the alleged representations made about the properties. Counter-claimants remark that they are long-term leaseholders of the properties who are obliged to incur the expense of repairs, and they have allegedly suffered damages as a result of the diminished

---

[34] The real estate claims are set forth in Counterclaim ¶ 37 (Lakewood Quarters), ¶ 38 (Citiscape Apartments), ¶ 39 (Citiscape Out Parcel), ¶ 40 (St. Charles Health Center), ¶ 41 (Woodland Village), and ¶ 42 (Fountain View).

14

values of the properties. Counter-claimants have submitted the affidavit of Maxwell Stolzberg who declares that the leases in question establish defendants' (counterclaim plaintiffs') rights to the long-term use of and responsibility for repairs on the property.[35]

Plaintiffs have failed to cite any authority to support their position that lease holders or operators have no rights to damages for alleged defects in real estate or, conversely, that only owners of real estate can assert the claims for damages asserted in the counterclaim. However, counter-claimants have also failed to allege in their counter-complaint how they as lessees/operators have a right to relief and the legal bases for such relief. Accordingly, the motion for summary judgment as to these claims will be denied, and counterclaim plaintiffs will be allowed to amend their counter-complaint to assert the legal bases, if any they have, for their right to relief as lessees/operators of the real estate at issue.

Plaintiffs assert that the counterclaim is an end-run around the asset agreement. In other words, the Asset Agreement itself provides the contractual provisions between the parties with respect to representations, warranties, and the survival of those warranties post-closing. Plaintiffs maintain that counter-claimants have only those rights which arise under the Asset Agreement, and none of the claims made are of the type that survive the closing. Thus, plaintiffs maintain that the counterclaims should be dismissed, inasmuch as the exclusive remedy of the purchasers is provided under the Asset Agreement.

Counter-claimants assert that because the claims include error, fraud and vices of consent,[36] if proven, these claims would vitiate the Asset Agreement. The court agrees and the motion for

---

[35] Counter-claimants' exhibit C, attached hereto as Exhibit 1, affidavit of Maxwell Stolzberg, ¶¶ 14-15.

[36] Counterclaim ¶¶ 59-60.

15

summary judgment will be denied inasmuch as we find that the Asset Agreement does not preclude counter-claimants from asserting the aforementioned claims.

*Requirement of leave of court*

Having decided that joinder of the counter-claimants is appropriate for the reasons stated, and being of the opinion that requiring a motion for leave to join would be a waste of counsels' time and effort and necessitate unnecessary court filing, this court will opt to follow those authorities which do not require leave of court in order to join actions such as this.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be denied in part and granted in part; the motion will be granted to the extent that counter-claimants shall amend their counter-complaint to assert the legal and factual bases, if any they have, for their right to relief as operators and lessees of the real estate at issue and to amend their counter-complaint to allege with specificity as required by Rule 9(b) and the PSLRA any allegations of fraud, either generally or pursuant to the Act; otherwise, the motion will be denied.

The court will also dismiss without prejudice plaintiffs-in-counterclaim, AS Master, LLC and Schwartzberg Associates, LLC.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 16th day of November, 2011.

James Trimble Jr.
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE